[Cite as *State v. Farrow*, 2023-Ohio-682.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 22CA12 |
| Plaintiff-Appellant, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Quazaa S. Farrow, | : | **RELEASED 3/01/2023** |
| Defendant-Appellee. | : | |

_____
<u>APPEARANCES</u>:

Brigham M. Anderson, Lawrence County Prosecutor, Ironton, Ohio, for appellant.

Steven H. Eckstein, Washington Court House, Ohio, for appellee.
_____
Hess, J.

**{¶1}** The state of Ohio appeals from a judgment of the Lawrence County Court of Common Pleas granting Defendant-Appellee Quazaa S. Farrow's motion to suppress evidence obtained through a warrantless search of a vehicle in which Farrow was a passenger. The state contends that the trial court erred in determining that the trooper's stop consisted of two separate searches and not one continuous search. The trooper initially stopped the vehicle for an expired tags violation but detected a strong odor of raw marijuana when he approached the driver. The trooper called for a backup officer to assist him, placed the driver and passenger, Farrow, in handcuffs in the back of his patrol car after informing them both of their *Miranda* rights, and he and the backup officer searched the passenger compartment of the vehicle. Neither officer found any marijuana or other illegal drugs. The backup officer left to respond to another call. The trooper returned the

driver and Farrow to the vehicle but detained them while he called for another backup officer and reviewed the audio and video recording made of them while they were in the back of the patrol car. After reviewing the recordings and further questioning the driver, the trooper and backup officer performed a second search of the vehicle, including a search of the engine compartment. They discovered marijuana in the passenger compartment and methamphetamine and heroin hidden near the headlight in the engine compartment.

{¶2}   The trial court determined that after the first search of the vehicle's passenger compartment resulted in no discovery of contraband, the trooper's reasonable suspicion of criminal activity was dispelled, and he was required under the Fourth Amendment to release the driver and Farrow. The trial court determined that the trooper would need a new reasonable suspicion of criminal activity before he could detain them for purposes of reviewing the video and audio recordings. In other words, the trial court determined that the trooper had no reasonable suspicion of criminal activity after his first search of the passenger compartment of the vehicle turned up empty and his review of the audio and video recordings was a "fishing expedition" for evidence of a crime.

{¶3}   We find that the trooper was engaged in one continuous search. The fact that the trooper detected a strong odor of raw marijuana allowed him to conduct an expansive search of the vehicle, beyond the passenger compartment and into the trunk and engine compartments. The trooper's continued detention of the driver and Farrow while he reviewed the audio and video recording, and asked follow-up questions of the driver, aided him in his efforts to target his search to locate what he continued to

reasonably suspect was contraband hidden somewhere in the vehicle. Therefore, we sustain the state's assignment of error and reverse the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶4}   The Lawrence County grand jury indicted Quazaa S. Farrow on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2)(C)(1)(d), a first-degree felony, one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(c), a second-degree felony, and one count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(d), a second-degree felony. Farrow filed a motion to suppress the evidence obtained from the warrantless search of the vehicle on the ground that it was an unconstitutionally prolonged detention because the "raw odor of marijuana alone does not constitute probable cause for the search of a vehicle." The state did not file a written response to Farrow's motion but asserted its arguments at the suppression hearing.[1]

{¶5}   At the suppression hearing, Trooper Malone of the Ohio State Highway Patrol testified that he was travelling westbound on U.S. 52 when a vehicle passed him with expired tags. Trooper Malone stopped the vehicle and as he approached it and spoke to the driver, he "detected a strong order of raw marijuana." He testified that he has considerable experience and training in the detection of raw and burnt marijuana by smell. He ordered the driver to exit the vehicle, informed her that he detected a strong odor of raw marijuana, and asked her if she used marijuana. The driver stated that she had smoked marijuana the previous day, but Trooper Malone did not detect any signs of

---

[1] The state preserved all of the arguments it presented on appeal when it presented them during closing arguments at the suppression hearing. *E.g., State v. Werder*, 6th Dist. Fulton No. F-19-008, 2020-Ohio-2865, ¶ 37-39 (a state waives arguments it neither raises in a written response to a motion to suppress nor presents at the suppression hearing).

impairment and did not perform a sobriety test. During that same interaction, Trooper Malone asked the driver if there was anything illegal in the vehicle, which she denied but also stated, "I don't want to get caught in the crossfire." Trooper Malone testified that he informed the driver of her *Miranda* rights, handcuffed her, patted her down, and placed her in the back of his patrol car. Trooper Malone requested a backup officer to the scene and ordered Farrow out of the car, spoke briefly to him, informed him of his *Miranda* rights, handcuffed him, patted him down, and placed him in the back of the patrol car with the driver. Trooper Malone testified that Farrow had the odor of raw marijuana on his person and a large amount of cash in his pocket.

{¶6}    A Lawrence County Sheriff's Deputy arrived to assist, and he and Trooper Malone searched the passenger compartment of the vehicle based on Trooper Malone's detection of the strong odor of marijuana but did not find any marijuana or other illegal drugs. The deputy left to respond to another call. Trooper Malone removed the handcuffs from the driver and Farrow, returned them to the vehicle, called for an additional backup officer, and reviewed the audio and video recording of the conversation between Farrow and the driver while they were detained in the patrol car.

{¶7}    The recording further confirmed Trooper Malone's suspicion that there were drugs hidden somewhere in the vehicle. Trooper Malone testified that law enforcement typically review the audio and video recording from the patrol car once probable cause has been established. He testified, "I felt that there was, you know, potential to have drug activity going on * * * we watch this video to see if, you know, if they've just said anything to each other * * * anything that would lead me to believe that there's definitely drugs in the car * * * because I hadn't found anything yet and it was an overwhelming odor of weed

in the car." Trooper Malone testified that the driver stated, "I'm going to jail" and Farrow stated that "he would loose [sic] his money in his pocket if they claimed it." Trooper Malone placed Farrow back in the patrol car, returned to the vehicle, and asked the driver why she made the statement about going to jail. The driver said she thought Farrow might have drugs and that when Farrow was at her house, she came out of her house and the hood was up on her car. Trooper Malone and the second backup officer placed the driver back in the patrol car and searched the passenger compartment again "because at this time, I hadn't found anything and there's still a strong odor of marijuana." They found a bag of marijuana under the front passenger seat. They searched under the hood in the engine compartment of the vehicle and found approximately 90 grams of methamphetamine and approximately 17 grams of heroin in a small opening near the passenger-side headlight.

{¶8} Trooper Malone testified that after a brief conversation with Farrow, he released the driver without issuing a warning or citation for her expired tags[2] and transported Farrow to the Lawrence County Jail.

{¶9} Following the hearing, the trial court issued a thorough, reasoned, and well-researched opinion. The trial court found that Trooper Malone had probable cause to stop the vehicle for expired tags and thus the initial traffic stop was constitutional. The trial court also found that when Trooper Malone detected a strong odor of raw marijuana emanating from the vehicle, he had probable cause to expand the scope of the initial stop

---

[2] The fact that the officer did not issue a citation for expired tags is not important. The Supreme Court of Ohio has stated that "the constitutionality of a prolonged traffic stop does not depend on the issuance of a citation." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 20-21. "The failure to issue a traffic citation when there is an indication of a potentially far more significant crime is easily excused when more pressing issues are being addressed." *Id.*

and search the driver, Farrow, and the vehicle. However, after the officers found no

evidence of marijuana in the passenger compartment, the trial court found:

> It is at this point where Constitutional concerns begin to surface. The time permitted to complete the purpose of this stop (expired tags), and the subsequent probable cause search of the vehicle (stemming from the detection of the strong odor of raw marijuana) had concluded. But instead of issuing a citation or warning (verbal or written) to the driver for her expired tags, Trooper Malone took the handcuffs off the defendant and driver, and returned them to their vehicles.

> Trooper Malone then watched the recording from the in-cruiser camera and testified that the conversations between the defendant and the driver while detained supported his suspicion that there were drugs in the vehicle. But at this point in time, Trooper Malone needed a reasonable articulable suspicion of criminal activity to extend the stop before he took the time to play the video. Instead, Trooper Malone testified that what he observed on the video provided the basis for his suspicion of criminal activity following the completion of the initial search of the vehicle.

> *          *          *

> After Trooper Malone searched the vehicle and failed to find any evidence of illegal activity, he was required by the Constitution to conclude the stop and not extend it longer than what was reasonably necessary to effectuate its purpose. When he removed the defendant and driver from his patrol car, took off their handcuffs and placed them back in the vehicle, but did not allow them to leave the scene, he extended the stop beyond the time reasonably required to complete his search, and the stop became an unlawful violation of the defendant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. Holding otherwise would be a complete deterioration of the Rights afforded under our State and Federal Constitutions and would give law enforcement the ability to conduct the fishing expeditions reference by the Forth [sic] District in *State v. Jones*[, 2022-Ohio-561, 185 N.E.3d 131 (4th Dist.)].

> *          *          *

> Accordingly, the Court finds that the defendant's detention was prolonged beyond what was reasonably needed to conduct the traffic stop and the first search of the vehicle based upon the detection of the strong odor of raw marijuana.  Therefore, his continued detention of the defendant after the initial search of the vehicle constituted an illegal seizure. For the foregoing reasons, the defendant['s] Motion to Suppress is hereby **GRANTED**.

**{¶10}** The state appealed.

## II. ASSIGNMENT OF ERROR

**{¶11}** The state presents the following assignment of error:

I.      The Trial Court Erred when it granted Defendant-Appellee's Motion to Suppress by determining that the Trooper's stop consisted of two separate searches and not one continuous search.

## III. LEGAL ANALYSIS

### A. Standard of Review

**{¶12}** The Supreme Court of Ohio recently reiterated the standard of review of a motion to suppress:

> Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. But the appellate court must decide the legal questions de novo. (Citations omitted.)

*State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶ 14.

### B. Motion to Suppress

**{¶13}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. An officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that the driver has committed, or is committing a crime, including a minor traffic violation. *Whren v.*

*United States,* 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *State v. Jones,* 2022-Ohio-561, 185 N.E.3d 131, ¶ 15-17 (4th Dist.).

**{¶14}** An investigative stop may last no longer than necessary to accomplish the initial goal of the stop:

> [T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

*Rodriguez v. United States*, 575 U.S. 348, 354, 191 L.Ed.2d 492, 135 S.Ct. 1609 (2015). The United States Supreme Court has explained that tasks tied to traffic infractions include: (1) determining whether to issue a traffic ticket, (2) checking the driver's license, (3) determining the existence of outstanding warrants, (4) inspecting the vehicle's registration, and (5) examining proof of insurance. "These checks serve the same objective as enforcement of the traffic code:  ensuring that vehicles on the road are operated safely and responsibly." *Id.* at 355; *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36 (during a traffic violation stop, motorist may be detained for a period of time sufficient to issue a citation "and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates").

**{¶15}** After the reasonable time for the original traffic stop has elapsed, the officer must have " 'a reasonable articulable suspicion of illegal activity to continue the detention.' " *State v. Jones* at ¶ 22, quoting *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.).

> When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

*State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997), paragraph one of syllabus;

*State v. Venham*, 96 Ohio App.3d 649, 656, 645 N.E.2d 831, 835 (4th Dist.1994) ("If, after talking to a driver, a reasonable police officer would be satisfied that there had been no unlawful activity, the driver must be permitted to continue on his way.") However, if "the officer ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *Robinette* at 241. Any further detention may last as long as the reasonable suspicion of criminal activity continues:

> If circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then *the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues*. Under these conditions, the continued detention is lawful, even if the officer is satisfied that the suspicion which initially justified the stop has dissipated. However, the lawfulness of the initial stop will not support a 'fishing expedition' for evidence of another crime. (Citations omitted.) (Emphasis added.)

*State v. Venham,* 96 Ohio App.3d 649, 655, 645 N.E.2d 831, 834 (4th Dist.1994)

{¶16} The continued investigatory detention does not violate the Fourth Amendment as long as it is objectively justified by the circumstances. *Robinette* at 241. The length of time for the continued detention is governed by the totality of the circumstances:

> "The officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel [the officer's] suspicions of criminal activity."

"Once the officer is satisfied that no criminal activity has occurred, then the vehicle's occupants must be released."

"In determining whether a detention is reasonable, the court must look at the totality of the circumstances." The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " (Citations omitted.)

*State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 18.

{¶17} In situations where the continued detention is based on the officer's detection of the odor of marijuana, the scope of the search depends upon whether the officer detects the smell of raw or burnt marijuana. If the officer only detects the smell of burnt marijuana, the search must be confined to the passenger compartment of the vehicle and cannot extend to the trunk or engine compartment:

A trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches. In *State v. Murrell* (2002), 94 Ohio St.3d 489, 764 N.E.2d 986, syllabus, this court held that "[w]hen a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the *passenger compartment* of that automobile." (Emphasis added.) The court was conspicuous in limiting the search to the passenger compartment.

The odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. *United States v. Nielsen* (C.A.10, 1993), 9 F.3d 1487. No other factors justifying a search beyond the passenger compartment were present in this case. The officer detected only a light odor of marijuana, and the troopers found no other contraband within the passenger compartment. The troopers thus lacked probable cause to search the trunk of Farris's vehicle. Therefore, the automobile exception does not apply in this case.

*State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 51-52. "This proposition is established by the common sense observation that an odor of burning

marijuana would not create an inference that burning marijuana was located in a trunk."

*State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 21.

**{¶18}** When an officer detects a strong odor of raw marijuana emanating from the vehicle, the officer is justified in extending the search beyond the vehicle's passenger compartment to other areas of the vehicle.

> If, during a valid stop, an officer qualified to recognize the smell of raw marijuana detects an overwhelming odor of raw marijuana, the officer is justified in believing that the vehicle contains a large amount of raw marijuana. If no large amount of raw marijuana is seen in the passenger compartment, the officer is justified in believing that a large amount of raw marijuana may be found in a container or compartment—including the trunk.

*Gonzales* at ¶ 23. "[W]hen a police officer has probable cause to believe a vehicle contains evidence of a crime, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search." *State v. Maddox*, 2021-Ohio-586, 168 N.E.3d 613, ¶ 20 (10th Dist.), citing *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

**{¶19}** Here Trooper Malone testified that he detected a strong odor of raw marijuana emanating from the vehicle and, when asked about her use of marijuana, the driver admitted she had smoked marijuana the day before. Based on this, Trooper Malone had probable cause to suspect contraband was hidden in the vehicle. Adding to the totality of the circumstances, the driver made an unusual comment about not wanting to be "caught in the crossfire" when asked about the presence of illegal drugs in the vehicle. Although Trooper Malone was unable to locate contraband in the initial search of the passenger compartment, he testified that he continued to suspect the contraband was hidden somewhere in the vehicle. When Trooper Malone was asked on cross-

examination why he did not let the driver and Farrow go after he found nothing after his first search of the passenger compartment,[3] he testified, "Because I still believed that there was something I wasn't finding. * * * I had probable cause to search * * * and I felt there was drugs there. It would be a borderline dereliction of duty if I just cut someone loose before I conducted, what I felt like, a thorough investigation." He was entitled to review the audio and video recording of the driver and Farrow for any assistance it might provide in locating hidden contraband, and conduct a warrantless search of the entire vehicle, including any containers, the trunk, and the engine compartment. His reasonable suspicions were not dispelled merely because he did not locate contraband in the search of the passenger compartment. Therefore, he did not need a new articulable and reasonable suspicion to review the audio and video recording and conduct a second, more thorough search of the vehicle.

{¶20} In *State v. Harper*, 4th Dist. Scioto No. 21CA3965, 2022-Ohio-4357, a trooper stopped a Dodge van after it crossed over the white fog line twice. The vehicle's plates did not match the Dodge van, but instead matched a Toyota. Additionally, the passenger lacked identification and both the driver and passenger gave the trooper suspicious information about their plans. One claimed they were travelling to West Virginia to do "masonry work" and the other called it "missionary work." The trooper called for a backup officer and, while waiting for information from dispatch to confirm the passenger's identity, the trooper walked his canine around the vehicle. The dog alerted

---

[3] The record identifies the vehicle as a "Sports Utility Vehicle," but it is unclear whether the initial search of the passenger compartment included the trunk area. Because the trooper detected the odor of raw marijuana, the distinction between the trunk and passenger compartment is not relevant to our analysis. *State v. Gonzales,* 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 24.

on the driver's side back door area and both driver and passenger were informed of their *Miranda* rights and placed in the back of the patrol car. *Id.* at ¶ 2-3.

{¶21}  For the next three hours, the trooper and the backup officer searched the van, starting and stopping their searches after reviewing the audio and video recordings of the driver and passenger in the patrol car:

> The troopers initially searched the interior of the van while Harper and Allen waited in the back seat of the cruiser. While in the cruiser, the men were being video and audio recorded as they watched the search take place. When the troopers failed to locate drugs hidden in the interior of the van during the initial part of the search, they removed the men from the cruiser, had them get back into their van, and the troopers then reviewed the video and audio footage from inside the cruiser. The troopers repeated this pattern twice: placing the men in the cruiser, searching the van, removing the men from the cruiser, reviewing video footage, and then resuming the search. Based upon statements and body movements of the men, they then resumed their search of the van to areas that seemed to be of interest to the men based upon their conversation in the back of the cruiser. Finally, the troopers located a black package that contained eleven different baggies with a total of approximately 1000 pills that were later determined to be oxycodone. The package was hidden behind an interior panel located on the rear passenger side of the van near the wheel well.

*Id.* at ¶ 4.

{¶22}  The defendant in *Harper* raised the same defense as Farrow does here. He argued that the initial search of the van was based upon the probable cause that arose from the canine alert, "but that once the initial search of the van was concluded without finding any contraband, 'there was no constitutional basis to further detain him or search the vehicle again and that subsequent searches of the vehicle were the result of an illegally prolonged detention.'" *Id.* at ¶ 20.

{¶23}  We found that the canine alert, like the trooper's detection of the odor of raw marijuana here, gave probable cause to search the vehicle for contraband. "This probable cause extended to the entire vehicle and *there was no time limit in conducting the search*."

(Emphasis added.) *Id.* at ¶ 38.[4] *See also State v. Williams*, 4th Dist. Highland No. 12CA7, 2013-Ohio-594, ¶ 26-27 (officers were permitted to stop a vehicle search, move the vehicle to an impound lot, and continue their search under safer conditions without obtaining a warrant because the same probable cause that existed at the time of the initial search still existed at the impound lot).

**{¶24}** In *State v. Maddox,* 2021-Ohio-586, 168 N.E.3d 613, ¶ 20 (10th Dist.) the defendant raised a similar argument that suspicions had been dispelled and a new articulable reasonable suspicion was required before he could be further detained and the vehicle searched. In *Maddox*, the police officer stopped a vehicle after the driver, Maddox, failed to use his turn signal. Upon approaching the vehicle, the officer detected the odor of raw marijuana emanating from the vehicle. After the officer told Maddox he smelled raw marijuana, Maddox admitted he had marijuana in his pocket and voluntarily surrendered a small amount of it. The officer searched the vehicle and discovered cocaine, heroin, and a firearm. Maddox filed a motion to suppress on the ground that the officer's reasonable suspicion that the vehicle contained contraband was dispelled when Maddox produced the small quantity of marijuana. Maddox argued that after he turned over the marijuana, the officer needed a new articulable and reasonable suspicion to conduct the search of the vehicle.

**{¶25}** The appellate court held that the odor of raw marijuana gave the officer probable cause to search "every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search." *Id.* at ¶

---

[4] Our decision in *State v. Harper* was issued on November 28, 2022. Thus, the trial court did not have the benefit of this decision when it rendered its decision in August 2022. Likewise, the parties did not have the benefit of it when they prepared their appellate briefs.

20. It rejected Maddox's argument that his voluntary surrender of the marijuana dispelled the officer's suspicion and removed any probable cause to continue a search of the vehicle.

> We find no merit in appellant's argument at the suppression hearing that once appellant voluntarily surrendered the marijuana, the officers were required to stop their investigation and simply charge appellant with misdemeanor drug possession. To the contrary, when appellant voluntarily surrendered the marijuana, officers had probable cause to believe appellant's vehicle contained other evidence of a crime. The subsequent warrantless search of the vehicle was conducted pursuant to the automobile exception. Under the rule of law advocated by appellant, a vehicle operator might avoid a search of the vehicle for illegal drugs during a lawful traffic stop by voluntarily surrendering a small amount of an illegal substance to law enforcement. Ohio law does not support such an absurd result.

*Maddox* at ¶ 23.

**{¶26}** Similarly, we find that Trooper Malone's suspicion that contraband was hidden in the vehicle was not dispelled simply because he was unable to locate any in his initial search of the passenger compartment. To conclude otherwise would mean that an officer who detects the odor of raw marijuana but does not find it in the passenger compartment would not be allowed to search the trunk, engine, or containers stored in the trunk or hidden in the engine compartment. Ohio law does not support this result and instead supports a thorough search of the entire vehicle. *Maddox, supra; State v. Donaldson*, 6th Dist. Wood No. WD-18-034, 2019-Ohio-232, ¶ 25; *State v. Lynn*, 12th Dist. Butler Nos. CA2017-08-129, CA2017-08-132, 2018-Ohio-3335, ¶ 20; *State v. Gartrell*, 2014-Ohio-5203, 24 N.E.3d 680, ¶ 72 (3d Dist.).

**{¶27}** We find the trooper's initial stop for expired tags was constitutional and he did not violate the Fourth Amendment by expanding the scope of the stop based on the strong odor of raw marijuana emanating from the vehicle. The scope and duration of the

stop was tailored to its underlying justification – an articulable and reasonable suspicion that the vehicle contained contraband. The trooper's reasonable suspicions were not dispelled after he failed to locate contraband during his initial search of the passenger compartment because the odor of raw marijuana entitles law enforcement to search the entire vehicle. The trooper did not unconstitutionally extend the duration of the stop to review the audio and video recording of the driver and Farrow while they were in the back of the patrol car. His review of the recording and subsequent questions to the driver allowed the trooper to focus his search for the suspected contraband on the engine compartment where he found heroin and methamphetamines hidden near the headlight.

IV.  CONCLUSION

{¶28}  We sustain the state's sole assignment of error and reverse the trial court's judgment.

JUDGMENT REVERSED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
         Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**