[Cite as *State v. Etherson-Tabb*, 2024-Ohio-550.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No.  22CA4009 |
| Plaintiff-Appellee, | : | |
| | | <u>DECISION AND</u> |
| v. | : | <u>JUDGMENT ENTRY</u> |
| Ryan C. Etherson-Tabb,[1] | : | |
| Defendant-Appellant. | : | **RELEASED 2/9/2024** |

_____
APPEARANCES:

Valerie M. Webb, The Law Office of Valerie M. Webb, LLC, Portsmouth, Ohio, for appellant.

Shane A. Tieman, Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____
Hess, J.

{¶1}   Ryan C. Etherson-Tabb appeals from a judgment of the Scioto County Court of Common Pleas convicting him of aggravated trafficking in drugs and possessing criminal tools.  Etherson-Tabb presents one assignment of error asserting that the trial court erred in denying his motion to suppress.  For the reasons which follow, we overrule the assignment of error and affirm the trial court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   On August 25, 2021, Etherson-Tabb was indicted on one count of aggravated trafficking in drugs, one count of aggravated possession of drugs, and one

---

[1] At the trial level, appellant indicated his last name is "Etcherson-Tabb."  In this decision we have spelled his last name as it appears in the judgment entry from which he appeals.

count of possessing criminal tools. He pleaded not guilty and filed a motion to suppress. The trial court conducted the suppression hearing and part of the bench trial simultaneously.

{¶3}    Several witnesses testified for the state, but most pertinent to this appeal is the testimony of Trooper Nick Lewis of the Ohio State Highway Patrol. He testified that on Sunday, June 28, 2020, around 11:30 p.m., he saw a vehicle traveling southbound on U.S. Route 23 ("US 23"). The vehicle caught his attention because it appeared to be a rental vehicle, and the driver appeared to be wearing a brand-new yellow construction vest. Trooper Lewis testified that a lot of drug traffickers use rental vehicles, that it is unusual to see construction workers on US 23 on a Sunday at 11:30 p.m., and that people sometimes try to look like construction workers to "blend in with traffic." Trooper Lewis caught up to the vehicle near the exit to State Route 823 ("SR 823").  The vehicle was in the right lane, and Trooper Lewis saw its left tires drift completely over the white dash center lane line before abruptly moving back into the right lane.  The driver then took the southbound exit ramp to SR 823. Trooper Lewis testified that there is a point where the fog lines for the southbound and northbound exit ramps "basically come into a triangle," and the lanes join. Right before that point, he saw the vehicle's "right side tire" drift over the southbound exit ramp's white fog line by about half a tire width. The driver then activated his turn signal and moved into the other lane.

{¶4}    Trooper Lewis had two cameras in his cruiser at the time of the traffic stop—a front-facing one which captured events happening through the front windshield and a rear-facing one which captured events happening in the backseat.  Trooper Lewis testified that the cameras were set up to continuously record but only began recording 60 seconds

before he activated his overhead lights. He indicated that the cameras did not capture the traffic violations in this case because they occurred more than 60 seconds before he activated his overhead lights.

{¶5} The video footage starts 90 seconds before Trooper Lewis activated his overhead lights. The audio is sometimes difficult to hear, but after Trooper Lewis approaches the vehicle, he can be heard asking the driver, Etherson-Tabb, for his license. Trooper Lewis testified that Etherson-Tabb gave him a Michigan ID card. On the footage, Etherson-Tabb tells Trooper Lewis that he is driving a rental car and heading to Ashland, Kentucky for court. They discuss the reason for the traffic stop, and Trooper Lewis says, "So you don't have a driver's license?" Etherson-Tabb says he does and gives Trooper Lewis some paperwork. Trooper Lewis briefly looks at it while Etherson-Tabb talks. Trooper Lewis puts the paperwork inside the vehicle and has Etherson-Tabb exit the vehicle. Trooper Lewis asks if Etherson-Tabb has any weapons. Etherson-Tabb indicates he does not and raises his arms up, and Trooper Lewis says he will pat Etherson-Tabb down if he does not mind. On the footage, it sounds as if he says, "Ok," and Trooper Lewis testified that Etherson-Tabb said he did not care. Trooper Lewis then does a pat-down search, places Etherson-Tabb in the back of the cruiser, and retrieves the paperwork from his vehicle.

{¶6} Trooper Lewis testified that he returned to his cruiser to verify whether Etherson-Tabb had a driver's license. On the footage, once in the cruiser, Trooper Lewis asks Etherson-Tabb what he has court for, and Etherson-Tabb says it is for a "ticket." Trooper Lewis asks if there is anything illegal in Etherson-Tabb's vehicle. Etherson-Tabb says there is not and something like "everything you need to do." Trooper Lewis testified

that he took this comment to mean Etherson-Tabb would probably consent to a vehicle search if asked, so Trooper Lewis had Trooper Matt Lloyd head to the scene. At some point before Trooper Lloyd arrived, Trooper Lewis ran the number on the Michigan ID card, and the Michigan BMV indicated Etherson-Tabb's license was expired and suspended. On the footage, Trooper Lewis and Etherson-Tabb discuss his paperwork. Trooper Lewis testified that he had "a difficult time" going through it because it was from two different courts. It appeared to him that Etherson-Tabb had been granted driving privileges in Michigan for 60 days, which had expired. Trooper Lewis testified that he tried to figure out if the privileges had been extended.

{¶7} On the footage, Trooper Lewis and Etherson-Tabb discuss the fact that another person rented the vehicle Etherson-Tabb is driving because he could not do so with a suspended license. Trooper Lewis also asks where Etherson-Tabb works. He initially says he is not working right now but then says he does a little construction in Detroit and is traveling from work. They discuss his driver's license again and a document Trooper Lewis says that he is "trying to figure out." About 10 minutes into the traffic stop, Trooper Lewis asks dispatch for a "78," which he testified is a criminal history check. He testified that he gave dispatch Etherson-Tabb's driver's license number, and at that point, dispatch will "typically run that," check the status of the person's license, check for warrants, and run a criminal history check. However, he acknowledged that he did not think dispatch could give him any information about the license status that he did not already have access to from his cruiser.

{¶8} On the footage, Trooper Lewis asks Etherson-Tabb additional questions about his upcoming traffic case. About 14 minutes into the stop, Trooper Lloyd arrives.

Trooper Lewis testified that at that point, he thought he was trying to verify whether Etherson-Tabb had court the next day. On the footage, Trooper Lewis says that if Etherson-Tabb does not care, "while they're checking some information on you," he will "check the car real quick" if Etherson-Tabb does not mind, and Etherson-Tabb says, "Ok." Trooper Lewis and Trooper Lloyd converse, and dispatch provides information on Etherson-Tabb's criminal history. The troopers finish their conversation, and Trooper Lloyd discusses the driver's license issue with Etherson-Tabb, while Trooper Lewis searches the front passenger side of the vehicle. About 16 minutes into the stop, Trooper Lewis announces that he found a "piece of weed." Trooper Lewis testified that based on his training and experience, he can identify marijuana by sight, and he found a "small piece of marijuana" or "little bit of marijuana residue on the floor." Trooper Lewis continued to search the vehicle, and Trooper Lloyd joined him after additional discussion with Etherson-Tabb about the driver's license issue. Trooper Lewis testified that aside from marijuana "debris" or "residue" which was "throughout the vehicle," the troopers found no other contraband.

{¶9} On the footage, about 52 minutes into the stop, the troopers stop the vehicle search. Etherson-Tabb returns to his vehicle. Trooper Lewis testified that he then reviewed the footage from his rear-facing camera to see if there was anything the troopers missed, like Etherson-Tabb reacting to a "hotspot on the car where something was * * * concealed." Trooper Lewis thought his story did not make sense because he made inconsistent statements about being employed, claimed to be coming from a construction job while wearing what appeared to be brand new clothing, and was traveling with six pairs of shoes for an overnight trip. The footage shows that while Etherson-Tabb is alone

in the cruiser waiting for Trooper Lewis to retrieve his paperwork, he puts his hands inside his pants and seems to adjust something in his crotch area. Trooper Lewis testified that when he watches footage from inside his cruiser, he can "kill" certain microphones. When he did this with a microphone that was creating a "buzzing" sound, he could hear a "crunching sound" when Etherson-Tabb moved his hands around. The footage also shows Etherson-Tabb moving his hands around his crotch area, from over top and inside of his pants, at other times he is in the cruiser.

{¶10} Based on his training and experience, Trooper Lewis believed Etherson-Tabb was concealing contraband, such as pills or crack cocaine. Trooper Lewis testified that he had Etherson-Tabb exit his vehicle again, searched him, and felt an object concealed between his legs. Trooper Lewis testified that he offered to let Etherson-Tabb leave the scene and do a direct indictment if he voluntarily surrendered the object. Etherson-Tabb reached down the front of his pants, pulled out a baggie containing 180 oxymorphone pills and 5 oxycodone pills, and gave it to Trooper Lewis, who let him leave the scene about an hour and a half after initiating the stop. Trooper Lewis could not recall whether he ever completed a written warning "for the lane violation." He did not cite Etherson-Tabb for driving under suspension because he was unable to confirm whether Etherson-Tabb had valid driving privileges. Trooper Lewis "aired [sic] on the side of caution" because the stop was during the COVID-19 pandemic, and he knew "Ohio was extending driver's license renewals," so he "went ahead with the assumption that Michigan had probably renewed" Etherson-Tabb's driving privileges.

{¶11} After the state rested its case-in-chief, the trial court overruled the motion to suppress. The defense then presented its case-in-chief during which Etherson-Tabb

testified. The trial court found him guilty on all counts.[2] The court found that the aggravated trafficking in drugs and aggravated possession of drugs counts merged. The state elected to proceed to sentencing on the aggravated trafficking in drugs count, and the court imposed an aggregate sentence of five to seven and a half years on that count and the possessing criminal tools count.

## II. ASSIGNMENT OF ERROR

{¶12} Etherson-Tabb presents one assignment of error: "The trial court erred in denying Appellant's Motion to Suppress."

## III. LAW AND ANALYSIS

{¶13} In his sole assignment of error, Etherson-Tabb contends that the trial court erred in denying his motion to suppress. He maintains the traffic stop was unconstitutional because "a reasonable prudent person would not believe a crime had been committed." He asserts that Trooper Lewis was only suspicious of him because he was wearing a yellow construction vest and driving a vehicle with Virginia license plates, followed his vehicle "for several miles without probable cause to stop it," and only stopped his vehicle when its "tires finally contacted the white line." Quoting *State v. Grigoryan*, 8th Dist. Cuyahoga No. 93030, 2010-Ohio-2883, ¶ 25, he asserts that "[a]t least one Ohio court has held that a vehicle's 'inconsequential movement within a lane' does not create reasonable, articulable suspicion for an investigatory stop and is insufficient for probable cause." [*Id.*] Etherson-Tabb also claims the duration of the stop was excessive, asserting

---

[2] The indictment indicated that the aggravated trafficking in drugs and aggravated possession of drugs counts involved oxycodone. The state filed a motion to amend the indictment to state those counts involved both oxycodone and oxymorphone. Before the suppression hearing/bench trial began, defense counsel told the court the defense had no objection to the motion. The court orally granted the motion and found Etherson-Tabb guilty of the drug counts as amended and the possessing criminal tools count. The court's post-trial judgment entry does not mention the amendment to the drug counts. However, we observe that pursuant to Crim.R. 36, "[c]lerical mistakes in judgments * * * may be corrected by the court at any time."

that "although Trooper Lewis reported that he observed marijuana residue on the floor of the vehicle, the time he took to review his in-car camera, coupled with the delay in obtaining assistance from another trooper went beyond temporary detention, was unreasonable, and amounted to an illegal seizure."

{¶14} "Normally, appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Supreme Court of Ohio has explained:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

{¶15} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The Supreme Court of Ohio has held that these provisions provide the same protection in felony cases. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 18. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure." *State v. Petty*, 2019-Ohio-4241, 134 N.E.3d 222, ¶ 11 (4th Dist.).

{¶16} " '[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth

Amendment—subject only to a few specifically established and well-delineated exceptions.' " (Footnotes omitted and alterations sic.) *State v. Conley*, 4th Dist. Adams No. 19CA1091, 2019-Ohio-4172, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Dorsey*, 4th Dist. Scioto No. 19CA3874, 2019-Ohio-3478, ¶ 13. In this case, law enforcement did not act pursuant to a warrant.

## A. Constitutionality of the Initial Traffic Stop

**{¶17}** A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Id.* at 810. "An officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that the driver has committed, or is committing a crime, including a minor traffic violation." *State v. Farrow*, 2023-Ohio-682, 209 N.E.3d 830, ¶ 13 (4th Dist.), citing *Whren* at 809-810, and *State v. Jones,* 2022-Ohio-561, 185 N.E.3d 131, ¶ 15-17 (4th Dist.). " '[A] traffic stop  with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer "could" have performed the act complained of; pretext is irrelevant if the action complained of was permissible.' " *Petty* at ¶ 13, quoting *State v. Koczwara,* 7th Dist. Mahoning No. 13 MA 149, 2014-Ohio-1946, ¶ 22.

**{¶18}** Trooper Lewis's testimony implicates R.C. 4511.33(A)(1), which states: "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, * * * [a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." Contrary to what Etherson-Tabb suggests, Trooper Lewis did not initiate the traffic stop based on inconsequential movement within a lane of traffic. Trooper Lewis testified that when Etherson-Tabb was driving in the right lane on US 23, Trooper Lewis saw his vehicle's left tires drift completely over the white dash center lane line before abruptly moving back into the right lane. *See generally State v. Hoffman*, 3d Dist. Marion No. 9-08-02, 2008-Ohio-2253, ¶ 2, 16, 20 (drifting over dashed white line between two lanes on two occasions by one to two tire widths violated R.C. 4511.33 and provided probable cause for traffic stop). Trooper Lewis also testified that when Etherson-Tabb was driving on the southbound ramp to SR 823, Trooper Lewis saw one of his vehicle's right tires drift over the white fog line by about half a tire width right before the southbound and northbound ramps join. *See generally State v. Allen*, 4th Dist. Scioto No. 21CA3969, 2023-Ohio-192, ¶ 41-42 (trial court reasonably applied caselaw to find violation of R.C. 4511.33(A)(1) where vehicle crossed fog line two times by half a tire width, making initial traffic stop valid).

**{¶19}** "[T]he observation of a traffic violation provides law enforcement with both reasonable suspicion and probable cause to stop a vehicle." *State v. Cremeans*, 2022-Ohio-3932, 199 N.E.3d 594, ¶ 29 (4th Dist.). The trial court indicated it believed Trooper Lewis's testimony, and "[a] traffic stop is constitutionally valid when a law-enforcement

officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, syllabus. Thus, we conclude Trooper Lewis had reasonable suspicion and probable cause to initiate the traffic stop, and the initial traffic stop was constitutional.

### B. Duration of the Traffic Stop

**{¶20}** Initially, we consider whether Etherson-Tabb properly preserved a challenge to the duration of the traffic stop for purposes of appellate review. " 'It is well settled that issues not raised in an original motion to suppress cannot be raised for the first time on appeal.' " *State v. Meadows*, 2022-Ohio-287, 184 N.E.3d 168, ¶ 21 (4th Dist.), quoting *State v. Jones*, 4th Dist. Highland No. 04CA9, 2005-Ohio-768, ¶ 18. Etherson-Tabb's written motion to suppress and defense counsel's oral argument in support of the motion do not explicitly address the duration of the traffic stop in this case. However, in overruling the motion, the trial court addressed the issue, stating that "one of the things that becomes impairing is the amount of time that we are out there on the scene." The court indicated the duration of the stop was not excessive because the troopers had to sort out the issue with Etherson-Tabb's license, and Trooper Lewis had the right to review the cruiser footage. Although we question whether Etherson-Tabb sufficiently raised a challenge to the duration of the stop we will address the issue.

**{¶21}** "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." (Citations omitted.) *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). "Because addressing

the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.' " (Alteration sic.) *Id.*, quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.E.2d 229 (1983) (plurality opinion*)*.  "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*, citing *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.E.2d 605 (1985) (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").  "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' " (Alteration sic.) *Id.* at 355, quoting *Illinois v. Caballes,* 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.E.2d 842 (2005).  "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.*  "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

{¶22}  "After the reasonable time for the original traffic stop has elapsed, the officer must have ' "a reasonable articulable suspicion of illegal activity to continue the detention." ' " *Farrow*, 2023-Ohio-682, 209 N.E.3d 830, at ¶ 15, quoting *Jones*, 2022-Ohio-561, 185 N.E.3d 131, at ¶ 22, quoting *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.).  "Any further detention may last as long as the reasonable suspicion of criminal activity continues[.]" *Id.*  We have explained:

> The length of the time for the continued detention is governed by the totality of the circumstances:

> "The officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel [the officer's] suspicions of criminal activity." "Once the officer is satisfied that no criminal activity has occurred, then the vehicle's occupants must be released."
>
> "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' "

(Citations omitted and alteration sic.) *Id.* at ¶ 16, quoting *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 18-19.

**{¶23}** Under the totality of the circumstances here, the stop's duration was reasonable. "[I]t has been noted that a timeframe of approximately 15 minutes should be sufficient, on average, to complete the necessary checks and be ready to issue a traffic citation." *State v. Harper*, 2022-Ohio-4357, 202 N.E.3d 126, ¶ 34 (4th Dist.). The traffic stop in this case exceeded that time; however, within the first 15 minutes of the stop, Trooper Lewis discovered facts which gave rise to a reasonable, articulable suspicion of additional criminal activity—that Etherson-Tabb was driving under suspension as indicated by the information from the Michigan BMV. Etherson-Tabb asserts that Trooper Lewis improperly delayed the stop "in obtaining assistance from another trooper," but contrary to what Etherson-Tabb suggests, Trooper Lewis was not idle while he waited for Trooper Lloyd to arrive. Trooper Lewis tried to confirm or dispel his suspicion that Etherson-Tabb was driving under suspension. He tried to ascertain whether Etherson-Tabb had valid driving privileges by reviewing paperwork from two different courts and discussing the matter with Etherson-Tabb multiple times.

{¶24} On the footage, the last conversation about the license issue before Trooper Lloyd arrives ends about nine and a half minutes into the stop. Trooper Lewis then gives dispatch Etherson-Tabb's license number, and there is a period of about four minutes before Trooper Lloyd arrives in which there is mostly silence interspersed with brief conversation about the reason for Etherson-Tabb's travel. It is not clear whether Trooper Lewis investigated the license issue during those minutes. However, it appears Trooper Lewis was still waiting for information from dispatch about outstanding warrants during this time. And even if it could be said that Trooper Lewis was not acting diligently during those minutes, the license issue still impeded his ability to complete the traffic stop within 15 minutes, and he found marijuana in the passenger compartment of Etherson-Tabb's vehicle about 16 minutes into the stop. Etherson-Tabb does not challenge the trial court's finding that he consented to the search which led to that discovery.

{¶25} "Under the automobile exception to the warrant requirement, officers may search a vehicle without obtaining a warrant when they have probable cause to believe the vehicle contains evidence of illegal activity." *State v. Jackson*, 171 Ohio St.3d 412, 2022-Ohio-4365, 218 N.E.3d 790, ¶ 28. " '[W]hen a police officer has probable cause to believe a vehicle contains evidence of a crime, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search.' " *Farrow*, 2023-Ohio-682, 209 N.E.3d 830, at ¶ 18, quoting *State v. Maddox*, 2021-Ohio-586, 168 N.E.3d 613, ¶ 20 (10th Dist.). Once Trooper Lewis found the small piece of marijuana on the vehicle floor, he had probable cause to search the entire vehicle. *See generally Jackson* at ¶ 1, 28 (observation of marijuana cigarette on vehicle floor gave probable cause to search

vehicle); *State v. Greenwood*, 2d Dist. Montgomery No. 19820, 2004-Ohio-2737, ¶ 10-11 (observation of marijuana seeds and leaves on passenger seat and floorboard gave probable cause to search entire vehicle); *State v. Burke*, 2d Dist. Montgomery No. 29256, 2022-Ohio-2166, ¶ 37 (explaining that while R.C. 3796.06(A)(3) allows possession of prescribed marijuana plant material, the Ohio Administrative Code requires that it be kept in an approved container in a secure location, so officer could reasonably conclude the defendant was illegally possessing marijuana when there was marijuana "shake" all over the defendant's clothing, "even it if it was legitimate medical marijuana").  Adding to the totality of the circumstances at that point were facts suggesting Etherson-Tabb was lying about being a construction worker.

{¶26} Contrary to what Etherson-Tabb suggests, Trooper Lewis was entitled to review the cruiser footage to see if the troopers missed any contraband in the vehicle. *See generally Harper*, 2022-Ohio-4357, 202 N.E.3d 126, at ¶ 4, 38-39 (rejecting contention that by starting and stopping vehicle search three times over about three hours to review cruiser footage, troopers conducted three separate searches which each required separate reasonable suspicion or probable cause because troopers had probable cause to search the entire vehicle, and there was no time limit in conducting the search); *Farrow*, 2023-Ohio-682, 209 N.E.3d 830, at ¶ 19, 27 (trooper's suspicion that vehicle contained contraband was not dispelled after he failed to locate contraband in passenger compartment because trooper was entitled to search entire vehicle, trooper was entitled to review recording of driver and defendant in patrol car "for any assistance it might provide in locating hidden contraband," and trooper did not unconstitutionally extend duration of stop to review the recording, which helped trooper focus search on the

engine compartment where he found drugs hidden near the headlight). The video footage, coupled with the marijuana debris in the vehicle and facts suggesting Etherson-Tabb was lying about his employment and travel plans, gave Trooper Lewis reasonable, articulable suspicion that Etherson-Tabb was concealing contraband around his crotch area. Trooper Lewis did not unconstitutionally further extend the duration of the stop to investigate that suspicion, which resulted in Etherson-Tabb turning over the baggie of pills.

**{¶27}** For the foregoing reasons, we conclude the duration of the stop was constitutional.

### C. Conclusion

**{¶28}** The trial court did not err when it denied Etherson-Tabb's motion to suppress. We overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**