[Cite as *State v. Campbell*, 2015-Ohio-3381.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 26497 |
| | : | |
| v. | : | Trial Court Case No. 14-CRB-1626 |
| | : | |
| AARON CAMPBELL | : | (Criminal Appeal from |
| | : | Dayton Municipal Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2015.

. . . . . . . . . .

LYNN R. DONALDSON, Atty. Reg. No. 0041507, and STEPHANIE L. COOK, Atty. Reg. No. 0067101, by MATTHEW O. KORTJOHN, Atty. Reg. No. 0083743, Dayton City Attorney's Office, 335 West Third Street, room 372, Dayton, Ohio 45402
       Attorneys for Plaintiff-Appellant

JULIA J. MARTIN, Atty. Reg. No. 0084156, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

       {¶ 1} The State of Ohio appeals the trial court order suppressing Aaron Campbell's

admission to police officers that he had been drinking alcohol, which lead to Campbell being charged with underage consumption of alcohol. The trial court found that Campbell was subjected to custodial interrogation without being given *Miranda* warnings. The State does not dispute that *Miranda* warnings were not given but contends that the warnings were not required because Campbell was not "in custody." We agree and reverse the suppression order.

## I. Facts

{¶ 2} Around 1:00 a.m. on March 16, 2014, University of Dayton Police Officer Tom Weber was patrolling a residential neighborhood near the University of Dayton campus when he noticed Campbell and two females near Campbell's car, which was parked along the sidewalk. The two females were getting into the car, and as Officer Weber approached in his cruiser he saw one of them drop an open container of alcohol on the ground before she got in. Weber stopped his cruiser in the middle of the street and approached Campbell, who had not yet gotten in the car.

{¶ 3} Officer Weber asked Campbell for his identification and asked how old he was. Campbell handed over his ID, telling him that he was eighteen years old. Weber then turned his attention to the two females. While Weber was talking to them, Campbell interrupted several times, trying to get Weber's attention and trying to get the girls to be cooperative. So when Officer Orrill arrived on the scene, Weber told Campbell to sit on the sidewalk while he dealt with the two females. Orrill stood near Campbell and spoke to him. Officer Weber soon learned that the two females were under the legal drinking age, so he arrested them both for underage consumption.

{¶ 4} After the girls were arrested, Weber turned his attention back to Campbell.

Weber asked Officer Orrill if Campbell had been drinking, and Orrill replied that Weber had told him that he had not been. But when Officer Weber asked Campbell if a breathalyzer test would show the same, Campbell admitted that "he had a couple of drinks." (Suppression Hearing Tr. 14). Weber eventually had Campbell taken to the campus police station, where Campbell's parents picked him up.

{¶ 5} Campbell was charged with one count of underage consumption, in violation of R.C. 4301.69(E), to which he pleaded not guilty. Campbell then filed a motion to suppress the incriminating statements that he made to the police officers at the time of the stop. An evidentiary hearing was held at which Officer Weber testified and a DVD of the audio and video from the body camera that he was wearing was admitted as an exhibit.[1] The State stipulated to the fact that Campbell was not given *Miranda* warnings. The trial court issued a written decision on November 20, 2014, finding that during the encounter Campbell was "was not free to go" and therefore *Miranda* warnings were required before questioning that resulted in the incriminating statements. Because he had not been given *Miranda* warnings, the trial court suppressed all the statements that Campbell made to the police officers, sustaining Campbell's suppression motion.

{¶ 6} The State appealed.

## II. Analysis

{¶ 7} The State assigns a single error to the trial court. It alleges that the court erred by granting Campbell's motion to suppress. The State contends that the trial court incorrectly found that when officers asked Campbell if he had been drinking, Campbell was in custody for purposes of *Miranda*.

---

[1] We watched and listened to the recorded encounter.

{¶ 8} Typically, in reviewing a trial court's suppression decision, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence * * * [and] must then independently determine * * * whether the facts satisfy the applicable legal standard." (Citation omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. But we have said that, "in the particular area of custodial interrogations, * * * whether a suspect is in custody is a mixed question of fact and law entitled to independent review." (Citations omitted.) *State v. Estepp*, 2d Dist. Montgomery No. 16279, 1997 WL 736501, *2 (Nov. 26, 1997); *see Thompson v. Keohane*, 516 U.S. 99, 102, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

{¶ 9} Police are not required to give *Miranda* warnings to every person they question, even if the person is a suspect. *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). "Only *custodial* interrogation triggers the need for *Miranda* warnings." (Emphasis sic.) (Citations omitted.) *Id.* That is so because the *Miranda* doctrine applies only in situations that put pressure on a detained person sufficient to "impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

{¶ 10} An investigative stop, a "*Terry* stop," does not put this kind of pressure on a person. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A police officer "whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' " *Berkemer* at 439,

quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). In this situation, the police officer is not required to give the person *Miranda* warnings before asking questions, because of the "comparatively nonthreatening character of detentions of this sort." *Id.* As we have said, "[g]eneral, on-the-scene questioning of persons concerning events that have happened does not ordinarily fall within the ambit of custodial interrogation." (Citations omitted.) *State v. Barnett*, 2d Dist. Montgomery No. 14019, 1994 WL 567551, *4 (Aug. 31, 1994). Analogously, the "noncoercive aspect of ordinary traffic stops" means that "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Berkemer* at 440.

{¶ 11} Of course, a person who has been detained initially for investigatory purposes or pursuant to a traffic stop may thereafter be subjected to treatment that renders the person "in custody" and thus be entitled to the protections of *Miranda*. *See id*. Whether the person is "in custody" depends on " 'how a reasonable man in the suspect's position would have understood his situation.' " *Biros* at 440, quoting *Berkemer* at 442. Whether a person is free to go is only part of the equation. Although a person "may not have been free to go, the fact that he was being detained does not necessarily mean that he was in custody." *State v. Johnson*, 2d Dist. Greene No. 2001 CA 55, 2001 WL 1562089 (Dec. 7, 2001). The person is in custody for *Miranda* purposes if " 'there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " *Biros* at 440, quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983).

{¶ 12} Here, we see nothing in the record that suggests that Campbell should have been given *Miranda* warnings before he admitted to drinking alcohol. The initial stop, by

itself, did not render him "in custody." And there is little evidence that between the time of the stop and time of his admission Campbell was restrained to a degree associated with a formal arrest. Undoubtedly the officer was officious in the encounter. But Campbell was neither handcuffed nor told that he was under arrest. He was not detained in a police car. Only about 15 minutes elapsed between the stop and Campbell being taken to the police station for his parents to pick him up. No other aspects of the interaction between Campbell and the police officers support the trial court's finding that Campbell was subjected to custodial interrogation at the scene of the stop. Campbell's treatment "cannot fairly be characterized as the functional equivalent of formal arrest." *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317.

{¶ 13} Campbell was not "in custody" for purposes of *Miranda* when he admitted to drinking alcohol. Consequently, the trial court erred by suppressing Campbell's admission.

{¶ 14} The sole assignment of error is sustained.

### III. Conclusion

{¶ 15} The trial court's judgment is reversed. This case is remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., dissenting:

{¶ 16} I disagree. Based on the evidence, the trial court could have reasonably concluded that Campbell was in custody and not free to leave. In my view, Campbell

was deprived of his freedom of movement in a significant way when he was ordered to "sit on the ground," with an officer standing nearby (or over him). In a routine traffic stop, drivers are not ordered to sit on the ground for fifteen minutes. Furthermore, in a routine traffic stop, five officers are not present. Here, both bike patrol officers and a second cruiser came to the scene. The two juvenile females were cuffed and taken into custody in Campbell's presence. As aptly and specifically noted in appellee's brief, the police dominated the situation, Campbell's vehicle was searched, and Officer Weber retained his driver's license.

{¶ 17} Further, besides the officious tone noted by the majority, I would find that the stop rose to the level of "coercive conditions." Campbell was intimidated into making incriminating statements by the threat that he would be locked up with "murderers and rapists."[2]

{¶ 18} This was not a temporary, non-police dominated interview as envisioned in *Berkemer*. It is inconceivable that a person facing Campbell's situation would conclude that he was just free to walk away. I acknowledge that "in the absence of coercive conditions * * * the short detention involved in a traffic stop falls outside the scope of *Miranda* * * *." *State v. Campbell*, 2d Dist. Clark No. 94-CA-78, 1995 WL 472142, * 4 (Aug. 9, 1995). This stop does not, however, in my view, fall outside the scope of *Miranda*. I agree with the trial court. Campbell was "at the mercy of the police." *Id.*

. . . . . . . . . .

---

[2] An eighteen-year-old without a criminal history would not be astute enough to know that someone accused of underage consumption would not be housed in the same pod with violent offenders such as "murderers and rapists."

Copies mailed to:

Lynn R. Donaldson
Stephanie L. Cook
Matthew O. Kortjohn
Julia J. Martin
Hon. Daniel G. Gehres