[Cite as *State v. Reece*, 2015-Ohio-3638.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140635 |
| | | TRIAL NO. B-1403687 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| GARY REECE, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 9, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*William F. Oswall, Jr.,* for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Gary Reece appeals the trial court's denial of his motion to suppress evidence found in his vehicle during a traffic stop. After police had stopped Reece's vehicle for making a left turn without a proper signal and for excessive window tint, a drug-detection dog alerted to Reece's vehicle. In a subsequent search of the vehicle, the police found a gun, a digital scale, and a canister containing marijuana, crack cocaine, and heroin.

{¶2} Reece was arrested, cited for the window-tint violation, and indicted for one count of possession of cocaine and one count of possession of heroin, both fifth-degree felonies, in violation of R.C. 2925.11(A). Following the trial court's denial of his motion to suppress, Reece pleaded no contest to both counts. The trial court found Reece guilty and sentenced him to two years of community control on each count.

{¶3} In this appeal, Reece argues the trial court erred in denying his motion to suppress, because the police's stop and detention of his vehicle, the drug-dog sniff, and the subsequent search of his vehicle violated his Fourth Amendment rights. Because we conclude that the police had probable cause to stop Reece's vehicle for two traffic violations, the drug sniff of the vehicle occurred while police were still investigating those initial traffic violations, and the drug-dog's alert gave police probable cause to search the vehicle, we affirm the trial court's judgment.

### Motion-to-Suppress Hearing

{¶4} Officer Bret Thomas testified that he was working undercover with his partner as part of the Safe Streets Unit, a gun and narcotics unit, when he saw a Chevy Suburban with "very dark window tint" make a left-hand turn without using a traffic signal. He radioed for a uniformed officer to make a traffic stop. Officer

2

Tammy Hussels, who was patrolling the area in a marked cruiser as a part of the same unit, stopped the vehicle. Officer John Mendoza, who had also been driving in the area with his drug-detection dog, Axle, arrived at the scene a minute or two after Officer Hussels. Officer Mendoza testified that he had seen Officer Hussels making the traffic stop. He pulled in behind her to provide backup during the traffic stop.

{¶5}  Officer Hussels testified that the driver, later determined to be Reece, had lowered the front driver's window. However, the other windows of the Suburban were "pitch black." Because Officer Hussels could not see inside the Suburban, she asked Reece to lower the front and back windows on the passenger side of the vehicle to enable her to more safely approach. Officer Hussels then asked Reece for his driver's license and proof of insurance.

{¶6}  Reece gave Officer Hussels his driver's license. She could not recall if Reece had given her his proof of insurance. Officer Hussels then asked Reece to step out of the vehicle. He complied. Once outside the vehicle, Reece submitted to a pat-down for weapons. Officer Hussels then asked Reece for consent to search the vehicle. When he refused, she asked him to step away from the vehicle so that Officer Mendoza could walk the dog around the outside of the vehicle. Officer Hussels told Reece that if the dog did not alert, she would issue him a citation and let him go on his way.

{¶7}  Officer Mendoza walked the dog around the perimeter of the vehicle one time. When the dog positively alerted to the odor of drugs on the driver's side door, Mendoza asked Reece if he had smoked marijuana in the vehicle. Reece stated that he had earlier that day. Reece then stood near a fence while the police searched his vehicle. They recovered guns, a digital scale, and a canister containing marijuana, crack cocaine, and heroin under the second row of seats in the vehicle.

{¶8}   Officer Hussels estimated that from the time of the traffic stop until the time the dog alerted to the vehicle, "[m]aybe five minutes" had passed.   The entire stop lasted 45 minutes.   Police arrested Reece and cited him for the window-tint violation.  He was later indicted for the two counts of possession of drugs.

{¶9}   The trial court, in overruling the motion to suppress, stated that it had considered the evidence presented on the motion.  The court concluded that the officers had acted appropriately, stating, "There was a violation here. You can't look into the vehicle with the way the windows were tinted.  Officers need to do that for their protection.  They have a right to proceed the way they did, so the motion is denied."

### *Traffic Stop of Reece's Vehicle and Drug-Dog Sniff*

{¶10}  In a single assignment of error, Reece argues the trial court erred by denying his motion to suppress the evidence recovered from his vehicle following the drug-dog sniff.

{¶11}  When reviewing a trial court's ruling on a motion to suppress, we employ a two-part analysis.  First, we review the trial court's findings of fact.  We give due weight to the inferences drawn from those facts found by the trial court as long as they are supported by competent, credible evidence.  *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  Secondly, with respect to the trial court's conclusions of law, we employ a de novo standard of review, to determine whether the facts satisfy the applicable legal standard.  *Id.*

{¶12}  Here the trial court orally denied Reece's motion to suppress without making any findings of fact.  We, therefore, review the record to determine whether sufficient evidence exists to support the trial court's legal conclusions.  *State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 10.   Although the record

4

reflects that the prosecuting attorney and defense counsel discussed the cruiser-cam video of the stop and search of Reece's vehicle at the beginning of the suppression hearing, the video was not admitted into evidence. It is unclear from the transcript of the proceedings whether the trial court reviewed the video prior to its ruling on the motion to suppress. Thus, we look only to the officers' testimony at the suppression hearing to determine if the stop and search of the Suburban violated Reece's Fourth Amendment rights.

{¶13} Reece first challenges the legality of the traffic stop. He argues that because the officers were patrolling in a narcotics and guns unit, their only purpose in stopping his vehicle was to search it for contraband. But the United States Supreme Court has held that the Fourth Amendment permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, irrespective of the officer's subjective motivation for the stop. *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see United States v. Gunnell*, 775 F.3d 1079, 1082 (8th Cir.2015).

{¶14} While the officers testified that they were part of a drug and narcotics unit, their undisputed testimony was that Reece had been stopped for an improper left-hand turn and for excessively dark window tint. Even if we were to assume that the officers' primary intent in stopping Reece was to further a drug investigation, as Reece suggests, the officers' observation of these two traffic violations provided probable cause to support the stop of his vehicle. Any ulterior motivation by the officers would be irrelevant under *Whren. See State v. Batchilli*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 8; *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.

{¶15} Reece next argues that once he had provided Officer Hussels with his driver's license and refused to consent to a search of the vehicle, she exceeded the scope of the traffic stop by ordering him out of the vehicle and detaining him further while Officer Mendoza and his dog performed the drug sniff around the perimeter of his vehicle. He argues that absent reasonable suspicion that he was engaged in any criminal wrongdoing, the drug-dog sniff of his vehicle was unlawful.

{¶16} The United States Supreme Court has held that

'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment' because the government's 'legitimate and weighty interest' in officer safety outweighs the '*de minimis*' additional intrusion of requiring a driver already lawfully stopped to exit the vehicle.

*Arizona v. Johnson*, 555 U.S. 323, 324, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009), quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *see State v. Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997), quoting *Mimms*. Thus, Officer Hussels's order that Reece exit from the vehicle did not violate the Fourth Amendment.

{¶17} Reece also argues that his Fourth Amendment rights were violated when Officer Hussels extended the traffic stop beyond what was reasonable to handle the investigation of the traffic violation. He argues that the police needed to have other evidence or suspicion of wrongdoing before bringing the drug-sniffing dog to the scene.

{¶18} At oral argument, Reece asserted that the United States Supreme Court's recent decision in *Rodriguez v. United States*, ____U.S.____, 135 S.Ct. 1609,

191 L.Ed.2d 492 (2015), supported his position. Because the decision had been released after the submission of the briefs in this appeal, we asked Reece and the state to submit supplemental briefs to address the impact of *Rodriguez* on this case.

{¶19} In *Rodriguez*, Rodriguez was stopped for a traffic violation. The officer completed the traffic stop, including and up to issuing a written warning for the violation, before asking Rodriguez if the officer could walk his drug-detection dog around the vehicle. When Rodriguez refused, he was detained until a second officer arrived. Following the second officer's arrival, the first officer retrieved his dog and walked it around the vehicle. The dog alerted to the presence of drugs, and the officers searched the vehicle, recovering amphetamines. Only seven to eight minutes had elapsed from the time the officer had issued the warning citation to the time the dog alerted. *Id.* at 1610.

{¶20} Rodriguez moved to suppress the evidence recovered from his vehicle, arguing, among other things, that police, lacking reasonable suspicion, had, nonetheless, extended the traffic stop to conduct a dog sniff. The district court denied Rodriguez's motion to suppress, finding no reasonable suspicion supporting the detention following the issuance of the written warning, but concluding, nonetheless, that under Eighth Circuit precedent, "the seven or eight minute delay was an acceptable '*de minimis* intrusion on Rodriguez's personal liberty.' " *Id.* at 1611. The Eighth Circuit affirmed, finding any intrusion acceptable under its precedent permitting the de minimis exception. *Id.*

{¶21} The Supreme Court granted certiorari to consider whether police, absent reasonable suspicion, could extend an otherwise-completed traffic stop in order to conduct a dog sniff. *Id.* at 1614. The Supreme Court held that in determining the reasonableness of a traffic stop, courts must examine the totality of

7

the circumstances to ascertain if the police diligently pursued the investigation into the purpose for the stop. *Id.* The Supreme Court acknowledged that during a traffic stop, the police, in determining whether to issue a ticket, may conduct ordinary inquires incident to the traffic stop. Those inquires typically include checking the driver's license, determining whether there are outstanding warrants against the driver and inspecting the automobile's registration and proof of insurance. *Id.* at 1615.

{¶22} The court, citing its earlier decisions in *Illinois v. Cabales,* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), and *Arizona v. Johnson*, 555 U.S. 323, 327-328, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), acknowledged that the Fourth Amendment tolerates certain unrelated investigations during the course of a traffic stop, such as a dog sniff and questioning unrelated to the traffic violation, as long as they do not lengthen the roadside detention. *Id.* at 1614. However, the court recognized that "[a] traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* Thus, the court held that while an officer may conduct certain unrelated checks during a traffic stop, he may not do so in a way that prolongs the stop absent the reasonable suspicion ordinarily demanded to justify detaining an individual. *Id.* at 1615. The court emphasized that "the critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop." *Id.* at 1616.

{¶23} A majority of the *Rodriguez* court concluded that because the officer had completed the purpose of the traffic stop—by issuing a warning citation to Rodriguez for the traffic infraction—the officer could not detain Rodriguez for the dog sniff, absent reasonable suspicion that he had been involved in other illegal

activity. Because the district court had concluded that the officer had no such reasonable suspicion, and the Eighth Circuit had not reached the issue, the Supreme Court remanded the case to the Eighth Circuit for further proceedings. *Id.* at 1616-1617.

{¶24} In this case, Reece's vehicle was lawfully stopped for a traffic violation and an equipment violation. Officer Mendoza arrived with his drug-detection dog one to two minutes after Officer Hussels had made the stop. At the time Reece denied Officer Hussels consent to search his vehicle, Officer Mendoza was already on the scene with his drug-detection dog. Thus, Reece was not delayed waiting for the arrival of Officer Mendoza and the drug-detection dog.

{¶25} Furthermore, there is no evidence that Officer Hussels prolonged her investigation of the traffic offense for the drug sniff of the vehicle to be completed. At the time that Officer Mendoza walked the dog around the vehicle and it alerted, Officer Hussels was still in the course of completing her investigation of the traffic offense. She had not yet completed the written citation. Because the dog's sniff of the exterior of the vehicle occurred within five minutes of the initial stop and was conducted during the time period necessary to effectuate the original purpose of the stop, the Supreme Court's holding in *Rodriguez* has no bearing on the dog sniff of Reece's motor vehicle. *See State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 19-31; *State v. Matthews*, 2d Dist. Miami No. 2014-CA-23, 2015-Ohio-1750, ¶ 5-21; *see also Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, at ¶ 14 (reaching the same result pre-*Rodriguez*); *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 19 and 23 (reaching the same result pre-*Rodriguez*).

**{¶26}** Furthermore, once the dog alerted, the police had probable cause to search Reece's vehicle. *See State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781, ¶ 22 (1st Dist.). Thus, the trial court did not err in denying Reece's motion to suppress the evidence recovered from his vehicle. We, therefore, overrule his sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**HENDON, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry this date.